UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

ROBERT D. SANGO,

        Plaintiff,

v.

TIMOTHY FLEURY et al.,

        Defendants.

_____/

Case No. 2:22-cv-17

Honorable Maarten Vermaat

## OPINION DENYING LEAVE
## TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 4.)

Plaintiff has not explicitly sought leave to proceed *in forma pauperis*. Nevertheless, because Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious or for failure to state a claim, he is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). The Court will order Plaintiff to pay the $402.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*.[1] This fee must be paid within twenty-eight (28) days of this opinion and accompanying order. If Plaintiff fails to pay the fee, the Court will order that this

---

[1] The filing fee for a civil action is $350.00. 28 U.S.C. § 1914(a). The Clerk is also directed to collect a miscellaneous administrative fee of $52.00. 28 U.S.C. § 1914(b); https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule. The miscellaneous administrative fee, however, "does not apply to applications for a writ of habeas corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915." *Id.*

case be dismissed without prejudice. Even if the case is dismissed, Plaintiff must pay the $402.00 filing fees in accordance with *In re Alea*, 286 F.3d 378, 380–81 (6th Cir. 2002).

## Discussion

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes

rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604–06 (6th Cir. 1998).

Plaintiff has been an active litigant in the federal courts in Michigan. In far more than three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See Sango v. Place*, No. 2:16-cv-136 (W.D. Mich. July 6, 2016); *Sango v. Lewis et al.*, No. 1:14-cv-342 (W.D. Mich. July 18, 2014); *Sango v. Huss*, No. 1:14-cv-2 (W.D. Mich. June 12, 2014); *Sango v. Miniard et al.*, No. 1:14-cv-344 (W.D. Mich. June 10, 2014); *Sango v. Hammond et al.*, No. 1:14-cv-283 (W.D. Mich. May 6, 2014); *Sango v. Novak*, No. 1:14-cv-343 (W.D. Mich. Apr. 23, 2014); *Sango v. Goinns et al*, No. 2:20-cv-205 (W.D. Mich. Oct. 15, 2020). In addition, Plaintiff repeatedly has been denied leave to proceed *in forma pauperis* in this Court and in the Eastern District of Michigan because he has three strikes. *See Sango v. Curtis et al.*, No. 1:14-cv-823 (W.D. Mich. Aug. 14, 2014); *Sango v. Wakley et al.*, 1:14-cv-703 (W.D. Mich. July 8, 2014); *Sango v. Grand et al.*, No. 2:14-cv-14060 (E.D. Mich. Oct. 31, 2014); *Sango v. Mich. State Office of Admin. Hr'gs & Rules et al.*, No. 1:14-cv-1272 (W.D. Mich. Jan. 13, 2015); *Sango v. Eryer et al.*, No. 1:15-cv-71 (W.D. Mich. Feb. 12, 2015); *Sango v. Nevins et al.,* No. 1:15-cv-179 (W.D. Mich. Mar. 3, 2015); *Sango v. Watkins*, No. 1:15-cv-221 (W.D. Mich. Mar. 12, 2015); *Sango v. Joiner*, No. 1:15-cv-232 (W.D. Mich. Mar. 23, 2015); *Sango v. Aramark et al.*, No. 1:15-cv-247 (W.D. Mich. Apr. 13, 2015); *Sango v. Bastain*, No. 2:16-cv-15 (W.D. Mich. Mar. 2, 2016); *Sango v. Bastain et al.*, No. 2:16-cv-14 (W.D. Mich. Mar. 2, 2016); *Sango v. Desselier*, No. 2:16-cv-13 (W.D. Mich. Mar. 2, 2016); *Sango v. Snyder*, No. 2:16-cv-12 (W.D. Mich. Mar. 2, 2016); *Sango v. Russell*, No. 2:16-cv-45 (W.D. Mich. Mar. 4, 2016); *Sango v. Place*, No. 2:16-cv-23 (W.D. Mich. Mar. 4, 2016); *Sango v. Dessellier et al.*,

No. 2:16-cv-123 (W.D. Mich. Jun. 10, 2016); *Sango v. Sohlden et al.*, No. 2:16-cv-18 (W.D. Mich. Mar. 13, 2017); *Sango v. West et al.*, No. 1:20-cv-156 (W.D. Mich. Mar. 10, 2020); *Sango v. Kludy et al.*, No. 1:20-cv-174 (W.D. Mich. Mar. 18, 2020), *Sango v. Goinns et al.*, No. 2:20-cv-196 (W.D. Mich. Oct. 15, 2020), *Sango v. Goinns et al*, No. 2:20-cv-205 (W.D. Mich. Oct. 15, 2020); *Sango v. Scheoder*, No. 2:21-cv-7 (W.D. Mich. Apr. 27, 2021).

Moreover, Plaintiff's allegations do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf*. [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id*. Consequently, a prisoner must allege facts in the complaint from which

4

the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

Plaintiff is currently incarcerated at the Alger Correctional Facility in Munising, Alger County, Michigan. He sues Warden Sarah Schroeder, Sergeants Unknown Seymorr and Unknown Nesberg, and Correctional Officers Timothy Fleury and Michael Eubanks. Plaintiff alleges that Defendant Fleury "was notified that a civil suit was screened and approved after he threatened to kill [Plaintiff] and [his] mother."[2] (ECF No. 1, PageID.3.) The facility "has been on lockdown so [he] rarely come[s] out of [his] cell and had little interaction with Fleury for a long time." (*Id.*) Plaintiff claims that once he and Defendant Fleury were interviewed by the Assistant Attorney General for his other lawsuit, Defendant Fleury began to recruit staff to harass Plaintiff and would threaten Plaintiff every time he saw him. (*Id.*)

Plaintiff wrote several grievances to which he received no response. (*Id.*) He alleges that at some point, Defendant Fleury "said [Plaintiff] stole a milk and he told [him] to put it back." (*Id.*) Plaintiff "then documented several meals when Fleury worked where prisoners walked away with 4 milks a piece and Fleury said nothing." (*Id.*) Plaintiff asked for the video footage to be reviewed, arguing that "each time Fleury claim[ed] he spoke to [him], the camera showed he did not approach [Plaintiff] to warn [him]." (*Id.*)

Plaintiff alleges that Defendants Seymorr and Nesberg interviewed him and Defendant Fleury about the grievances. (*Id.*, PageID.4.) In each grievance, Plaintiff asked for the video footage to be reviewed. (*Id.*) He claims that Defendants Seymorr and Nesberg did not review the footage, but claimed that Defendant Fleury "said [Plaintiff] tried to take a milk and that

---

[2] Plaintiff references his pending lawsuit in *Sango v. Flruey*, No. 2:20-cv-213 (W.D. Mich.). In that matter, Plaintiff claims that Fleury and other MDOC officials have retaliated against him for filing grievances. Defendant Fleury has filed a motion for summary judgment, which remains pending before the Court.

5

he warned [Plaintiff] and that he let [him] off with 'progressive discipline.'"[3] (*Id.*) Plaintiff goes on to claim that Defendant Schroeder denied his grievance appeal and said that the "camera showed not one prisoner took an extra milk (which would include [Plaintiff]) but that Fleury's statement is credible." (*Id.*, PageID.5.)

Plaintiff goes on to allege that on January 23, 2022, Defendant Fleury walked past his cell as Plaintiff was going out to empty his trash. (*Id.*) Fleury said, "You can't get the system to review the camera on a grievance, how can you get them to investigate when I kill your mommy?" (*Id.*) He claims that Defendant Eubanks was at the officer's desk and overheard Fleury. (*Id.*) Defendant Eubanks said, "I will make sure Sango get[]s [the Omicron COVID-19 variant] this week ([Plaintiff is] not vaccinated) and dies." (*Id.*) Defendant Fleury then stated, "If he [does not] kill [himself] for getting his mother killed I'm going to kill him." (*Id.*, PageID.6.)

Allegations that Defendant Fleury threatened to kill Plaintiff and that Defendant Eubanks threatened to ensure he contracted the Omicron COVID-19 variant suggest a danger. However, such threats of harm have been Plaintiff's "go to" allegation to avoid the "three strike" consequence of previously filing meritless lawsuits. For example, in 2021, Plaintiff alleged that an officer told prisoners to stab Plaintiff. *See Sango v. Scheoder*, No. 2:21-cv-7, 2021 WL 1624610, at *4 (W.D. Mich. Apr. 27, 2021). The Court noted that while such an allegation suggested danger, it could make no assessment of whether the threat posed an imminent risk because Plaintiff had provided no information concerning when the threat was made. *Id.* In 2020, the Court concluded that an officer's threat that Plaintiff "should stop being a 'smart ass' lest he end up harmed by another prisoner" was not "sufficiently 'real and proximate'" to support an

---

[3] According to Plaintiff, progressive discipline "is where an officer will warn a prisoner before [writing] a misconduct." (ECF No. 1, PageID.4.) He claims that progressive discipline "is usually applied to new rules, because a prisoner doesn't know or has just learned a rule." (*Id.*)

inference of imminent harm.  *See Sango v. Goinns*, No. 2:20-cv-196, 2020 WL 6074014, at *3 (W.D. Mich. Oct. 15, 2020).  In 2015, this Court twice concluded that similar threats alleged by Plaintiff were insufficient to demonstrate imminent danger.  *See Sango v. Eryer*, No. 1:15-cv-71, 2015 WL 630493, at *3 (W.D. Mich. Feb. 12, 2015) (concluding that Plaintiff's allegations that officers threatened that he would be dead failed to demonstrate that physical injury was imminent); *Sango v. Mich. Office of Admin. Hearings and Rules*, No. 1:14-cv-1272, 2015 WL 163547, at *4 (W.D. Mich. Jan. 13, 2015) (concluding that Plaintiff's claims that officers had plotted to kill him and had a $200.00 "hit" on him were "unsupported by any plausible allegations of fact" to suggest that Plaintiff was in imminent danger).

The Eastern District of Michigan has also rejected Plaintiff's allegations of such threats as demonstrative of imminent danger on at least one occasion.  *See Sango v. Grand*, No. 2:14-cv-14060, 2014 WL 5511812, at *2 (E.D. Mich. Oct. 31, 2014).  In that matter, Plaintiff alleged that he was in danger because "various unnamed prison guards have encouraged various gang members at the Ionia Maximum Facility to stab" him.  *Id.*  The court found that "Plaintiff's conclusory allegations that people are trying to kill him are completely unsupported by any evidentiary material, thus, he is not entitled to invoke the imminent danger exception to § 1915(g)." *Id.*

Reviewing the frequency with which Plaintiff has faced such threats, and the dearth of any factual allegations to show action to carry them out, leads the Court to conclude that they "are described with insufficient facts and detail to establish that he is in danger of imminent physical injury . . . ." *Rittner v. Kinder*, 280 F. App'x 796, 798 (6th Cir. 2008) (footnote omitted).  Based on Plaintiff's allegations, they are not sufficiently "'real and proximate.'"  *Vandiver*, 727

F.3d at 585 (quoting *Rittner*). That is not to say that they are "ridiculous . . . baseless . . . fantastic –or delusional . . . irrational or wholly incredible." *Id*. They are simply insufficient.

In the instant case, Plaintiff does not allege that he suffered any physical injury. Despite the threats to have Plaintiff killed and to ensure that he contracted COVID-19, Plaintiff does not allege that anything actually happened to him. The use of such language by prison officials, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987). While the Court does not condone such threats, Plaintiff's insufficient allegations, combined with the frequency with which Plaintiff alleges he has faced such threats, do not demonstrate that physical injury is imminent.

Therefore, § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action. Plaintiff has twenty-eight (28) days from the date of entry of this order to pay the civil action filing fees, which total $402.00. When Plaintiff pays his filing fees, the Court will screen his complaint as required by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c). If Plaintiff does not pay the filing fees within the 28-day period, this case will be dismissed without prejudice, but Plaintiff will continue to be responsible for payment of the $402.00 filing fees.

Dated: February 10, 2022                   /s/ *Maarten Vermaat*
                                          Maarten Vermaat
                                          United States Magistrate Judge

**SEND REMITTANCES TO THE FOLLOWING ADDRESS**:

Clerk, U.S. District Court
399 Federal Bldg.
110 Michigan St., N.W.
Grand Rapids, MI 49503

**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court."**

8